IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIAN K. SAMMONS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 17-1368-MN-SRF ) |
| NANCY A. BERRYHILL, Acting Commission of Social Security, | ) ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

Plaintiff Brian Sammons ("Sammons") filed this action on October 2, 2017 against the Defendant Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration ("Commissioner"). Sammons seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's July 31, 2017 final decision, denying Sammons' claim for Social Security Disability Insurance Benefits ("DIB") under Title II, and Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 401-434, 1381-1383f. This court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Currently before the court are cross-motions for summary judgment filed by Sammons and the Commissioner. (D.I. 8; D.I. 11) Sammons asks the court to reverse the Administrative Law Judge's ("ALJ") decision for an award for benefits, or, alternatively, remand for a new hearing and decision. (D.I. 9 at 20) The Commissioner requests the court to affirm the ALJ's decision. (D.I. 12 at 2, 19) For the reasons set forth below, the court recommends denying Sammons' motion for summary judgment and granting the Commissioner's motion for summary judgment.

## II. BACKGROUND

### A. Procedural History

Sammons filed DIB and SSI applications on August 9, 2012, claiming a disability onset date of January 3, 2010. (Tr. at 184-94, 211) The Social Security Administration ("SSA") initially denied Sammons' claim on September 12, 2013, and SSA denied his claim again, after reconsideration, on March 26, 2014. (*Id.* at 114-26, 129-42) On May 14, 2014, Sammons requested a hearing, which occurred on April 1, 2016. (*Id.* at 143-44, 32-66) On July 25, 2016, Administrative Law Judge Jennifer M. Lash issued an unfavorable decision, finding Sammons was not qualified as disabled under the Act. (*Id.* at 7-19) On July 26, 2017, Sammons immediately requested an appeal. (*Id.* at 182) The Appeals Council denied his appeal on July 31, 2017. (*Id.* at 1-5)

On October 2, 2017, Sammons brought this action against the Commissioner, challenging the ALJ's decision. (D.I. 1) On February 7, 2018, Sammons filed a motion for summary judgment, and on April 9, 2018, the Commissioner filed a cross-motion for summary judgment. (D.I. 8; D.I. 11)

### B. Medical History

The ALJ found Sammons has the following severe impairments: fibromyalgia/arthralgia, headaches, an affective disorder, and anxiety disorders. (Tr. at 12) The onset date of Sammons' impairments is January 3, 2010. (*Id.* at 19)

On September 19, 2011, Sammons saw Dr. David M. Bercaw ("Dr. Bercaw"), and Dr. Bercaw reported Sammons was slow to ambulate and had multiple joint and muscle aches with fatigue. (*Id.* at 290-91) At that time, Dr. Bercaw recommended a rheumatologist consultation if Sammons' lab results were negative. (*Id.* at 291) According to the record, Sammons next saw

2

Dr. Bercaw on March 12, 2012 and April 16, 2012 for intermittent vertigo. (*Id.* at 285-86, 288) On June 2, 2012, Sammons went to the emergency room for dizziness and abdominal pain. (*Id.* at 319-25)

Dr. Hoskote Nagraj ("Dr. Nagraj"), examined Sammons on March 10, 2014.[1] (*Id.* at 326) In his examination of Sammons, Dr. Nagraj found Sammons could walk for thirty to sixty minutes at a time, stand for fifty minutes at a time, sit for a prolonged period, and lift thirty to forty pounds of weight at a time. (*Id.* at 328) Further, Dr. Nagraj "advised [Sammons] to follow up with his psychiatrist and see his primary care physician on a regular basis." (*Id.*)

According to the record, Sammons did not receive additional medical care until January 29, 2015. (*Id.* at 422) Dr. Lauren Foy ("Dr. Foy") treated Sammons, and this was her first time treating Sammons. (*Id.*) Dr. Foy recommended to Sammons that he should start taking Cymbalta again, and begin aquatic therapy. (*Id.* at 424) Sammons subsequently saw Dr. Foy on February 26, 2015, and Dr. Foy again recommended aquatic therapy and encouraged activity and stretching. (*Id.* at 419-20)

Sammons visited Dr. Foy on April 1, May 1, June 1, and July 1 of 2015, and during each visit, Dr. Foy recommended aquatic therapy, activity, and stretching. (*Id.* at 403-04, 406-08, 412-14, 416-17) Between those visits, Sammons visited Dr. Foy for an apparent flare up after "overdoing it." (*Id.* at 409-10) Dr. Foy once again recommended aquatic therapy, activity, and stretching. (*Id.*) In September 2015, Dr. Foy recommended Sammons see a psychologist due to stress related to his ex-wife moving his two children to New York. (*Id.* at 395-96) According to

---

[1] Dr. Nagraj evaluated Sammons for disability purposes only at the request of the Social Security Administration. No treatment was provided by this consultant. (Tr. at 326)

3

the record, Dr. Foy last saw Sammons on October 19, 2015, and Dr. Foy completed the questionnaire on December 2, 2015.[2] (*Id.* at 334-38, 389)

On October 12, 2015, Sammons received a psychiatric diagnostic evaluation from Mid-Atlantic Behavioral Health. (*Id.* at 345-47) Sammons visited with staff at Mid-Atlantic Behavioral Health from October 26, 2015 through April 25, 2016. (*Id.* at 342, 348-57, 364-72, 385-87) During the period Sammons was treated at Mid-Atlantic Behavioral Health, Sammons was diagnosed with generalized anxiety disorder, panic disorder, and major depressive disorder. (*Id.* at 354-57, 364-66)

### C. Vocational Expert Testimony Before ALJ Lash

ALJ Lash presented the following hypothetical to the vocational expert ("VE"):

> Now I'd like you to assume a hypothetical individual of the same age, education, and work experience as the Claimant, assume this hypothetical individual can perform sedentary exertional work and can occasionally balance, stoop, kneel, crouch and – crouch, crawl, and climb ramps and stairs, never climb ladders, ropes or scaffolds, must avoid all exposure to hazards including moving machinery and unprotected heights, and again is limited to unskilled work with routine repetitive tasks, with no public interaction and occasional interaction with co-workers and supervisors, would there be any unskilled occupations available for such a hypothetical individual?

(Tr. at 61-62) The VE testified at the sedentary exertional level, the described individual could work as a final assembler, a dial marker, and a patcher. (*Id.* at 62) In a follow up hypothetical, ALJ Lash presented the VE the following:

> Now I'd like you to assume a hypothetical individual of the same age, education, and work experience as the Claimant, assume this hypothetical individual has that same residual function capacity as the last hypothetical but that the individual would be more limited in that the routine repetitive tasks must be performed in a low stress environment. That's being defined as no frequent change in the work setting. Would there be any unskilled occupations available for such a hypothetical individual?

---

[2] The questionnaire is a form created by Sammons' attorneys titled "Disability Impairment Questionnaire."

4

(*Id.* at 62-63) The VE testified that the three positions mentioned above for the previous hypothetical at the sedentary exertional level would be possible with the additional limitations of the second hypothetical. (*Id.* at 63)

On cross-examination, Sammons' counsel asked the VE: "If you have an individual who can never or rarely be around perfumes, any sort of chemical irritants or aerosol irritants, would that limit an individual's ability to perform work at any exertional level?" (*Id.* at 63-64) The VE testified a limitation of not being able to be around certain types of scents "would be work preclusive because it would not be possible to control." (*Id.* at 64) Sammons' attorney further asked the VE:

> You have a hypothetical individual the same age, education, vocational profile as the Claimant can sit for less than a hour in an eight hour day, stand, stand and/or walk for less than an hour, must get up every fifteen minutes for five to ten minutes and can lift occasionally up to twenty pounds and carry occasionally ten pounds, could that individual perform any full-time work?

(*Id.*) The VE responded that an individual with those limitations could not perform any full-time work. (*Id.*) Next, Sammons' attorney asked "[w]hat's the acceptable threshold for absences in a month?" (*Id.*) The VE responded that "[if] an individual has regular patterns of absences of even one day per month, if that's occurring for several months in a row, then it would be considered excessive by the employer and would be work preclusive." (*Id.*)

Sammons' attorney questioned the amount of handling the listed jobs above required, and the VE testified that the handling for the final assembler and patcher would be frequent, and for the dial marker the handling would be constant. (*Id.* at 64-65) Sammons' attorney then followed up and asked the VE: "[s]o if the individual is limited to at most occasional bilateral hand usage or while using the hands for grasping, turning,

twisting hands and fingers for fine manipulations and the arms for reaching, would that eliminate all of those jobs?" (*Id.* at 65) The VE confirmed that the presented limitation would eliminate all of the presented jobs. (*Id.*) Finally, Sammons' attorney asked the VE: "In general for sedentary unskilled jobs is bilateral ha[n]d usage typically at least frequent for those positions?" (*Id.*) To which the VE responded, "[t]ypically there are a small sampling of positions that would be at occasional but the majority are at frequent." (*Id.*)

### D. The ALJ's Findings

Based on the factual evidence and the testimony of Sammons and the VE, the ALJ determined that Sammons did not qualify as disabled under the Act from January 3, 2010 to July 25, 2016, the date of the ALJ's decision. (Tr. at 10-19) The ALJ found:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2015.

2. The claimant has not engaged in substantial gainful activity since January 3, 2010, the alleged onset date (20 CFR 404.4571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia/arthralgia, headaches, an affective disorder, and anxiety disorders (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) and that he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. He can never climb ladders, ropes, or scaffolds and must avoid all exposure to hazards including moving machinery and unprotected heights. He is limited to unskilled work involving routine, repetitive tasks performed in a low stress environment (defined as no frequent changes in the work setting) with no public interaction and occasional interaction with coworkers and supervisors.

6

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 28, 1971 and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined by the Social Security Act, from January 3, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. at 12-19)

### III. STANDARD OF REVIEW

Findings of fact made by the ALJ, as adopted by the Appeals Council, are conclusive if they are supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2015). Judicial review of the ALJ's decision is limited to determining whether "substantial evidence" supports the decision. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the ALJ's decision and may not re-weigh the evidence of record. *See id.* In other words, even if the reviewing court would have decided the case differently, the court must affirm the ALJ's decision if it is supported by substantial evidence. *See id.* at 1190–91.

Substantial evidence is defined as less than a preponderance of the evidence, but more than a mere scintilla of evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the United States Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)). As the United States Supreme Court has explained, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Federal Rule of Civil Procedure 56. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If "reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed." *See id.* at 250–51 (internal citations omitted). Thus, in the context of judicial review under § 405(g):

> [a] single piece of evidence will not satisfy the substantiality test if [the ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

*Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir. 1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). Where, for example, the countervailing evidence consists primarily of a claimant's subjective complaints of disabling pain, the ALJ "must consider the subjective pain

8

and specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." *Matullo v. Bowen*, 826 F.2d 240, 245 (3d Cir. 1990).

"Despite the deference due to administrative decisions in disability benefit cases, 'appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)). "A district court, after reviewing the decision of the [Commissioner] may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the [Commissioner]'s decision with or without remand to the [Commissioner] for rehearing." *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

## IV. DISCUSSION

### A. Disability Determination Process

The pivotal issue in this case is whether Sammons was disabled under the meaning of the Act at any point from the alleged disability onset date, January 3, 2010, through the date of the ALJ's decision, July 25, 2016. (Tr. at 10-19) Title II of the Act "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yucket*, 482 U.S. 137, 140 (1987); 42 U.S.C. § 423 (a)(1)(D) (2015). Title XVI of the Act "provides for the payment of disability benefits to indigent persons under the Supplemental Security Income program." *Bowen*, 482 U.S. at 140; 42 U.S.C. § 1381(a) (2018).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015); 42 U.S.C. 1382c(a)(3)(A) (2004). An

individual is considered disabled "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C § 423(d)(2)(A) (2015); 42 U.S.C. § 1382c(a)(3)(B) (2004); *see also Barnhart v. Thomas*, 540 U.S. 20, 20 (2003).

In order to determine whether a claimant has a disability, "the Commissioner uses a five-step sequential evaluation process." *Irizarry v. Barnhart*, 233 F. App'x 189, 191 (3d Cir. 2007); 20 C.F.R. § 404.1520 (2012); *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner, at any point during the five-step process, finds a disability or a non-disability, the Commissioner can stop the claim review. 20 C.F.R. § 404.1520(a)(4); *see also Irizarry v. Barnhart*, 233 F. App'x 189, 191 (3d Cir. 2007).

In the first step, the Commissioner considers the claimant's work activity, and if the claimant is "doing any substantial gainful activity, [the Commissioner] will find the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i) (2012). In the second step, the Commissioner "consider[s] the medical severity of [the claimant's] impairments." *Id.* at § 404.1520(a)(4)(ii) (finding a claimant is not disabled when the claimant "do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement"); *see also Plummer*, 186 F.3d at 428 (finding the claimant needs to show impairments are severe).

In step three, the Commissioner also "consider[s] the medical severity of [the claimant's] impairments," but if the claimant's "impairment(s) . . . meets or equals one of" the listed impairments the claimant will be deemed disabled. *Id.* § 404.1520(a)(4)(iii); *see also Plummer*, 186 F.3d at 428 (stating the listed impairments are "presumed severe enough to preclude any

gainful work"). If the claimant's impairment is not a listed impairment nor an equivalent impairment, the Commissioner will move to step four. *See Plummer*, 186 F.3d at 428.

In the fourth step, the Commissioner will assess the claimant's "residual functional capacity and [the claimant's] past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv); *see also Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994) (finding the claimant bears the burden of proving he or she cannot perform his or her past work). If the Commissioner finds the claimant can still do his or her past relevant work, the Commissioner will find the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

Finally, in the fifth step, the Commissioner will assess the claimant's residual functional capacity, age, education, and work experience "to see if [the claimant] can make an adjustment to other work." 42 C.F.R. § 404.1520(a)(4)(v). If the Commissioner finds the claimant can adjust to other work, the claimant will not be considered disabled. *Id.* But, if the Commissioner finds the claimant cannot adjust to other work, the Commissioner will find the claimant is disabled. *Id.* However, the burden shifts to the Commissioner in the fifth step to prove whether the claimant can or cannot adjust to new work. *See Plummer*, 186 F.3d at 428.

In order to determine the claimant is not disabled, "[t]he ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [the claimant's] medical impairments, age, education, past work experience, and residual functional capacity." *Id.* In addition, the ALJ has to consider the "cumulative effect of all of the claimant's impairments" when determining if the claimant can adjust to other work. *Id.* To help make the fifth step determination, the ALJ will normally "seek assistance of a vocational expert." *Id.*; *see also Podedworny*, 745 F.2d at 218 (discussing how the VE gives assistance to the ALJ).

11

### B. Whether the ALJ's Decision was Supported by Substantial Evidence

On July 25, 2016, the ALJ found Sammons was not disabled within the meaning of the Act from January 3, 2010 to July 25, 2016. (Tr. at 10-19) Even though the ALJ found Sammons had the severe impairments of fibromyalgia/arthralgia, headaches, an affective disorder, and anxiety disorders, the ALJ concluded that Sammons had the residual functional capacity to perform a range of sedentary work. (*Id.* at 10-14) The ALJ determined Sammons "is limited to unskilled work involving routine, repetitive tasks performed in a low stress environment with no public interaction and occasional interaction with coworkers and supervisors." (*Id.* at 14) With the factual findings listed above, the ALJ determined Sammons could not return to his previous occupation.[3] (*Id.* at 17) However, the VE did testify that Sammons could work as a final assembler, a dial marker, or a patcher. (*Id.* at 62)

Sammons argues substantial evidence does not support the ALJ's decision because, when making the decision, the ALJ did not attribute the correct weight to Dr. Foy's medical opinion, did not evaluate Sammons' testimony correctly, and relied on a faulty hypothetical question. (D.I. 9 at 2) Whereas, the Commissioner argues substantial evidence supports the ALJ's decision because the ALJ appropriately weighed Dr. Foy's medical opinion, gave deference to Sammons' testimony, and used a credible hypothetical to establish Sammons' limitations. (D.I. 12 at 1-2)

#### 1. Weight Attributed to Dr. Foy's Medical Opinion

Sammons claims the ALJ misunderstands fibromyalgia, which led the ALJ to improperly assess little weight to Dr. Foy's medical opinion. (D.I 9 at 12) In addition, Sammons argues that

---

[3] Sammons' past work history included employment as a legal secretary; charge account clerk; paralegal; and work processing operator. (Tr. at 17)

12

the ALJ misinterpreted Sammons' medical data because the ALJ did not have any specific medical findings or non-medical findings to support the ALJ's assessment of Sammons' residual functional capacity ("RFC"). (D.I. 9 at 15) In response, the Commissioner contends that the ALJ gave appropriate weight to Dr. Foy's medical opinion because Dr. Foy based her opinion on Sammons' subjective complaints, and Dr. Foy's opinion was inconsistent with her own treatment notes. (D.I. 12 at 9-10)

A medical opinion will have "controlling weight" in an ALJ decision if the ALJ finds the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." *Thomas v. Colvin*, C.A. No. 10-78-GMS-SRF, 2014 WL 6847740, at *10 (D. Del. Dec. 4, 2014) (quoting *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (internal quotations omitted); *see also Dixon v. Comm'r of Soc. Sec.*, 183 F. App'x 248, 251 (3d Cir. 2006); *see also* 20 C.F.R. § 404.1527(d)(2). "The ALJ must apply several factors in deciding how much weight to assign" to a medical opinion. *Griffies v. Astrue*, 855 F. Supp. 2d 257, 270 (D. Del. 2012). The factors "include the treatment relationship, the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion afforded by the medical evidence, consistency of the opinion with the record as a whole, and specialization of the treating physician." *Griffies*, 855 F. Supp. 2d at 270-71; *see also Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 660 (D. Del. 2008); *see also* 20 C.F.R. § 404.1527(d)(2)-(6); *see also* 20 C.F.R. § 416.927. Moreover, opinions about whether the claimant is disabled are not medical opinions, and thus, do not receive special weight. *See Dixon*, 183 F. App'x at 251; *see also* 20 C.F.R. § 404.1527(e)(1) & (3). Further, even if the ALJ decides a medical opinion does not receive controlling weight, the ALJ "must not automatically" decide to not "give a treating

13

physician's opinion no weight whatsoever." *Gonzalez*, 537 F. Supp. 2d at 660; *see also* SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). Finally, no matter how much weight the ALJ attributes to a medical opinion, the ALJ's decision must have good reasoning for the weight attributed, and the ALJ can only reject a medical opinion "if it is based on contradictory medical evidence." *Thomas*, 2014 WL 6847740, at *10 (citing *Dougherty v. Astrue*, 715 F. Supp. 572, 581 (D. Del. 2010) (internal quotations omitted).

Here, the ALJ determined Dr. Foy's opinion was not entitled to controlling weight and gave Dr. Foy's opinion "little weight because it [was] not well supported by medically acceptable clinical and diagnostic findings and is inconsistent with other substantial medical evidence including her own progress notes." (Tr. at 16-17) The ALJ reasoned Dr. Foy's opinion was not supported by her own findings or any other objective findings. (*Id.* at 17). In addition, the ALJ found Dr. Foy has only treated Sammons a few times over the course of ten months.[4] (*Id.* at 17) Dr. Foy's opinion was a completed RFC Questionnaire with her notes from Sammons' appointments. (*Id.* at 334-425) The District of Delaware has found completed RFC Questionnaires are medical opinions when supported by "years of medical assessments, reports, notes, and other documentation." *Griffies*, 855 F. Supp. 2d at 269 (finding the claimant had fibromyalgia and received continuous treatment from two different doctors for six and five years, respectively). The facts of the present case are dissimilar to *Griffies* because Dr. Foy had only treated Sammons every one to three months during a ten-month period when completing her medical opinion. (Tr. at 17)

---

[4] When Dr. Foy completed the Disability Questionnaire Form on December 2, 2015, she identified the first treatment date as January 29, 2015 and the most recent treatment date as October 19, 2015. (Tr. at 334)

14

Even though Dr. Foy based her prognosis of fibromyalgia on a rheumatologic lab work-up that came back negative, no evidence except Sammons' complaints support Dr. Foy's opinions on Sammons' limitations. (*Id.* at 334, 389-425) The Third Circuit has not given special significance to medical opinions when the opinions were unsupported by medical findings regarding the claimant's functional limitations, and when the claimant's subjective complaints were the basis for the opinions. *See Dixon*, 183 F. App'x at 252. Further, the Third Circuit has determined that the ALJ is not bound by a treating physician's opinion in regards to a claimant's "functional capacity." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). Even when the claimant is suffering from fibromyalgia, the Third Circuit has not given special weight to medical opinions when the claimant's subjective complaints are the basis for those opinions. *Dixon*, 183 F. App'x at 249, 252. Thus, the ALJ attributed the proper weight to Dr. Foy's medical opinion.

### 2. Evaluation of Sammons' testimony

Sammons claims that the ALJ's analysis of his physical and mental conditions was improperly evaluated. (D.I. 9 at 17) In addition, Sammons asserts that the ALJ had not identified any specific medical findings that were inconsistent with Sammons' testimony. (*Id.*) In response, the Commissioner argues that the ALJ properly weighed Sammons' testimony and the ALJ appropriately found that "objective medical evidence did not support greater limitations." (D.I. 12 at 15)

The ALJ will consider the claimant's personal statements and objective medical evidence in determining a claimant's capacity to work. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Nocks v. Astrue*, 626 F. Supp. 2d 431, 446 (D. Del. 2009)(citing *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (holding that even in fibromyalgia cases, the

15

ALJ must compare the claimant's testimony and the objective medical evidence). However, even though the ALJ is required to consider claimant's testimony, the ALJ cannot solely use the claimant's testimony as a basis for its findings. *See Nocks*, 626 F. Supp. 2d at 446. The ALJ must evaluate a claimant's symptoms using a two-step process. SSR 16-3P (S.S.A.), 2016 WL 119029, at *2. First, the ALJ must determine if there is an impairment, physical or mental, that could produce the claimant's symptoms. *Id.* Second, the ALJ then must determine how those symptoms could limit that claimant's work capabilities. *Id.* To determine the limitations the ALJ must consider the objective medical evidence, the claimant's testimony, and statements provided by other medical sources. *Id.* at *4.

Here, the ALJ determined Sammons had impairments that could cause his symptoms; however, the record does not indicate the intensity, persistence, and limiting effects of those symptoms as Sammons alleges. (Tr. at 15) Next, the ALJ evaluated Sammons' limitations by reviewing Dr. Foy's medical opinion, Dr. Nagraj's medical opinion, Sammons' testimony, and the vocational expert's testimony. (*Id.* at 10-19)

The Third Circuit, on many occasions, has found that when "a claimant testifies that [he] suffers from pain and [his] testimony is corroborated by medical reports, the ALJ is required to give the subject allegations 'great weight.'" *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984)); *see also Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993). Here, the ALJ did give great weight to Sammons' complaints because, despite finding the treating physician based her opinion on Sammons' subjective complaints, the ALJ found Sammons could not return to his prior occupation, and Sammons' functional capacity was only at a low range of sedentary exertional work. *See Simmonds*, 807 F.2d at 58 (finding that an ALJ has appropriately attributed weight to

16

a claimant's testimony when finding the claimant is limited to a sedentary exertional work level even when the medical reports only repeat the claimant's own subjective complaints).

Further, if "a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence." *Green v. Schweiker*. 749 F.2d 1066, 1068 (3d Cir. 1984) (citing *Smith*, 637 F.2d at 972). The ALJ found Sammons' testimony concerning the intensity, persistence, and limitations of his symptoms was not entirely consistent with the objective medical evidence presented. (Tr. at 15) Moreover, the ALJ found Sammons' complaints of muscle weakness and joints "lock[ing] up" (*id.* at 52), are not consistent with Dr. Nagraj's medical findings of full strength and full range of motion in Sammons' joints with a slow walk.[5] (*Id.* at 16) In addition, Sammons asserts that he can only stand for fifteen minutes at a time, only walk for five to ten minutes, only sit for an hour, and only lift less than twenty pounds. (*Id.* at 44, 53) However, Dr. Nagraj opines that Sammons should be able to stand for fifty minutes at a time, walk for thirty to sixty minutes, sit for a prolonged period of time, and lift thirty to forty pounds. (*Id.* at 328) Nevertheless, the ALJ found that Sammons' testimony supported a clear limitation "to unskilled work involving routine, repetitive tasks performed in a low stress environment with no public interaction and occasional interaction with coworkers and supervisors." (*Id.* at 14) Thus, the ALJ appropriately evaluated Sammons' testimony.

### 3. Reliance on Hypothetical Question Directed at the Vocational Expert

Sammons claims that the hypothetical question presented to the VE did not accurately portray all of Sammons' impairments because the hypothetical question did not take into

---

[5] Dr. Nagraj made his findings in March of 2014; however, the ALJ found Sammons' physical condition had since "remained largely unchanged." (Tr. at 16)

17

consideration Sammons' moderate difficulties with concentration, persistence, or pace.[6] (D.I. 9 at 18-19) The Commissioner contends that the hypothetical accurately portrays Sammons' impairments, and there is no hardline rule that says an ALJ must include specific restrictions because a claimant has moderate difficulties with concentration, persistence, or pace. (D.I. 12 at 17)

"A hypothetical question must reflect all of a claimant's impairments that are supported by the record otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d. Cir. 1987)); *see also Podedworny*, 745 F.2d at 218; *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1155 (3d Cir. 1983); *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Moreover, the "reference[] to all impairments encompass only those that are medically established," not "every impairment alleged by a claimant." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (finding that an impairment does not need to be severe to be considered). Further, a hypothetical question directed at a VE "must accurately convey . . . all of a claimant's credibly established limitations." *Id.*

The ALJ found that the record medically established Sammons had the following impairments: fibromyalgia/arthralgia, headaches, an affective disorder, anxiety disorders,

---

[6] Sammons also argues that due to the errors the ALJ made with Dr. Foy's medical opinion and Sammons' testimony, the court cannot rely on the testimony of the VE. (D.I. 9 at 18) However, the evidence supports a finding that the ALJ made no error with Dr. Foy's medical opinion or with Sammons' testimony as discussed *supra*, §§ IV(B)(1) and (2). Thus, the court can rely on the VE's testimony.

18

vertigo, and irritable bowel syndrome.[7] (Tr. at 12-13) In addition, the ALJ found Sammons had moderate difficulties with social functioning and moderate difficulties with concentration, persistence, and pace. (*Id.* at 14) Further, the ALJ asked the VE a hypothetical question about an individual similar in age, education, and work experience as Sammons who was limited to unskilled work with routine repetitive tasks performed in a low stress environment with no public interaction and occasional interaction with co-workers and supervisors. (*Id.* at 61-63) The ALJ defined a low stress work environment as "no frequent changes in the work setting." (*Id.* at 63)

The limitation at issue is Sammons' moderate difficulties with concentration, persistence, and pace. (D.I. 9 at 18-19; D.I. 12 at 17) However, the Third Circuit has found the phrase "simple, routine, repetitive work" is a sufficient hypothetical to account for difficulties with "concentration, persistence, and pace." *Burns*, 312 F.3d at 123 (citing *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001). Here, the ALJ used the phrase "unskilled work with routine repetitive tasks." (Tr. at 61-63) Thus, the ALJ provided the VE with a hypothetical that took into consideration all of Sammons' medically established impairments and limitations.

## V. CONCLUSION

For the foregoing reasons, the court recommends denying Sammons' motion for summary judgment (D.I. 8), and granting the Commissioner's cross-motion for summary judgment. (D.I. 11)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

---

[7] The ALJ did not find Sammons had a nose or sense of smell disorder or a visual disorder because those alleged disorders were not documented in any of the presented medical evidence. (Tr. at 13)

19

within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 4, 2019

Sherry R. Fallon
United States Magistrate Judge