IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIAN KEITH SAMMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 17-1368 (MN) (SRF) |
| | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM ORDER</u>**

WHEREAS, United States Magistrate Judge Sherry R. Fallon issued a 20-page Report and Recommendation ("R&R") (D.I. 15), dated February 4, 2019, recommending that Plaintiff Brian Keith Sammons' ("Plaintiff" or "Sammons") motion for summary judgment (D.I. 8) be denied and that Defendant's cross motion for summary judgment (D.I. 11) be granted;

WHEREAS, on February 13, 2019, Plaintiff timely objected to the R&R (D.I. 16);

WHEREAS, on March 4, 2019, Defendant responded to Plaintiff's objections (D.I. 17) incorporating by reference "the reasoning set forth in Magistrate Judge Fallon's well-reasoned [R&R], as well as the arguments set forth in the Commissioner's brief [D.I. 12]";

WHEREAS, the Court has considered the motions *de novo, see Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3), and has further reviewed the pertinent filings;

WHEREAS, Plaintiff objects to the R&R findings that (1) the ALJ properly weighed the medical opinion evidence of record and properly determined Mr. Sammons' residual functional capacity; (2) the ALJ properly evaluated Mr. Sammons' testimony; and (3) the ALJ relied on an

appropriate hypothetical question to the vocational expert. The Court will address each objection in turn.

NOW, THEREFORE, IT IS HEREBY ORDERED this 8th day of March 2019 that:

For the reasons set forth below, Plaintiff's objections (D.I. 16) are OVERRULED. Judge Fallon's R&R (D.I. 15) is ADOPTED. Plaintiff's motion for summary judgment (D.I. 8) is DENIED and Defendant's cross motion for summary judgment (D.I. 11) is GRANTED. The Clerk of Court is directed to CLOSE this case.

### A. Weighing of Medical Opinion Evidence To Determine Residual Functional Capacity.

Plaintiff argues that the ALJ improperly gave "little weight" to the opinion of Dr. Foy, who had treated Sammons, and failed to identify the "allegedly 'objective' findings in the notes that purportedly conflict with Dr. Foy's opinion." (D.I. 16 at 3). In order to determine the proper weight to give a medical opinion, the ALJ must weigh all evidence and resolve any material conflicts. *See Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is not for this Court to reweigh the medical opinions in the record. *See Monsour Medical Center v. Heckler,* 806 F.2d 1185, 1190 (3d Cir.1986). Instead, the Court's review is limited to determining if there is substantial evidence to support the ALJ's weighing of those opinions. *See id.*

The Third Circuit subscribes to the "treating physician doctrine." *Mason v. Shalala,* 994 F.2d 1058, 1067 (3d Cir.1993); *see also* 20 C.F.R. § 404.1527(d)(2). "Under that doctrine, a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all." *Mason,* 994 F.2d at 1067. A treating physician's opinion is therefore accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic

2

techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Fargnoli v. Massanari,* 247 F.3d 34, 42 (3d Cir.2001); *see also Dass v. Barnhart,* 386 F.Supp.2d 568, 576 (D. Del. 2005) ("A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.") (internal quotations omitted). Thus, an ALJ may reject a treating physician's opinion "only on the basis of contradictory medical evidence." *Morales v. Apfel,* 225 F.3d 310, 318 (3d Cir.2000) (internal quotation marks omitted). It follows that an ALJ cannot reject a treating physician's opinion "for no reason or for the wrong reason." *Id.* at 317.

Here, the ALJ explained her reasons for affording less weight to Dr. Foy's opinion. She noted that it was not well supported by objective findings and was inconsistent with other substantial medical evidence, including Dr. Foy's own treatment notes. (Tr. 16-17; D.I. 15 at 14). The ALJ noted that examinations showed full muscle strength and full range of motion (Tr. 16, 291). Progress notes from Dr. Foy repeatedly recommended that Plaintiff *increase*, rather than restrict, his physical activity to treat his fibromyalgia. (Tr. 388, 393, 407, 414, 417, 420). Consistent with this, Plaintiff noted that aquatic therapy helped and provided him with more energy. (Tr. 403). Aside from a slow gait and tender points, Dr. Foy's notes do not document decreased strength or muscle atrophy. (Tr. 390-91, 399, 404, 407, 410, 413, 417, 420, 424).[1]

In addition, the ALJ found that Dr. Foy had treated Sammons only a few times over the course of ten months. (Tr. 17). Dr. Foy's "opinion" was a completed RFC Questionnaire and her

---

[1] Similarly, the ALJ also discussed evidence from consultative examiner Dr. Nagral, who documented no focal weakness, a normal gait, and full range of motion throughout Plaintiff's body, with the exception of only mildly reduced lumbar extension. (Tr. 16, 327). He believed that Plaintiff could sit for a prolonged period. (Tr. 328).

3

notes from Sammons' appointments. (Tr. 334-425) As the R&R correctly noted, "[t]he District of Delaware has found completed RFC Questionnaires are medical opinions when supported by 'years of medical assessments, reports, notes, and other documentation.' [*Griffies v. Astrue*, 855 F. Supp. 2d 257, 269 (D. Del. 2012)] (finding the claimant had fibromyalgia and received continuous treatment from two different doctors for six and five years, respectively). The facts of the present case are dissimilar to *Griffies* because Dr. Foy had only treated Sammons every one to three months during a ten-month period when completing her medical opinion. (Tr. at 17)." (D.I. 15 at 14).

Against this backdrop, the ALJ cited evidence and her conclusion enjoys the support of substantial evidence. The R&R reasonably found that the ALJ was not bound by an opinion that appeared largely to be based on subjective complaints. (D.I. 15 at 15).

### B. Evaluation of Plaintiff's Testimony.

Plaintiff objects to the R&R finding that the ALJ properly considered Sammons' testimony.[2] Credibility assessments involve a two-step process. First, Plaintiff must provide objective medical evidence showing a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms to determine the extent to which they limit Plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1529(c)(2). "Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms . . . ." 20 C.F.R. § 404.1529(c)(2). Other relevant information includes what may precipitate or aggravate the

---

[2] Plaintiff focuses on the R&R conclusion that the ALJ gave "great weight" to Sammons' complaints. (D.I. 16 at 6-7). The Court addresses the objection to the ALJ's consideration of Sammons' testimony *de novo* and determines that the ALJ properly weighed Sammons' testimony.

4

symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 404.1529(c)(3). The ALJ should reject claims of subjective complaints if the ALJ does not find them credible. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). The Court, moreover, should "ordinarily defer to an ALJ's credibility determination." *Reefer v Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). Overturning an ALJ's credibility determination is an 'extraordinary step', as credibility determinations are entitled to a great deal of deference." *Metz v. Fed. Mine Safety and Health Review Comm'n*, 532 Fed. App'x. 309, 312 (3d Cir. 2013).

Here, the ALJ afforded due weight to Plaintiff's testimony. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986) (holding that an ALJ's finding that a claimant can do work only at a level significantly lower than in the past constitutes an implicit acceptance of his complaints and accords them appropriate weight). Notwithstanding minimal objective findings and conservative treatment, the ALJ gave Plaintiff the benefit of the doubt and gave less weight to expert medical opinions that Plaintiff did not have a severe mental impairment and could perform medium work. (Tr. 17). The ALJ agreed that Plaintiff could not perform the more strenuous demands of his past work as a legal secretary, paralegal, and work processing operator – work that was skilled in nature, and which Plaintiff related he performed at the light exertional level. (Tr. 17, 60). To the extent that the ALJ found Sammons' testimony "concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons," the ALJ explained her reasoning, citing inconsistencies between the limitations Sammons claimed to experience and medical findings in the record. For example, as the R&R correctly noted, the ALJ found Sammons' complaints of muscle weakness and joints

5

"lock[ing] up," are not consistent with Dr. Nagraj's[3] medical findings of full strength and full range of motion in Sammons' joints with a slow walk. (D.I. 15 at 17; Tr. 52, 16). In addition, while Sammons asserted that he could only stand for fifteen minutes at a time, only walk for five to ten minutes, only sit for an hour, and only lift less than twenty pounds, Dr. Nagraj opined that Sammons should be able to stand for fifty minutes at a time, walk for thirty to sixty minutes, sit for a prolonged period of time, and lift thirty to forty pounds. (D.I. 15 at 17; Tr. 44, 53, 328). And as discussed above, notes from Dr. Foy recommended that Plaintiff *increase*, rather than restrict, his physical activity to treat his fibromyalgia, and doing so with aquatic therapy helped. (Tr. 403).

The ALJ appropriately evaluated Sammons' testimony. Therefore, the Court agrees with the Report's recommendation that substantial evidence exists to support the ALJ's credibility assessment of Sammons' testimony.[4]

### C. Hypothetical Question to the Vocational Expert

A hypothetical question must include all the claimant's "credibly established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Thus, a limitation supported by medical evidence, and "otherwise uncontroverted in the record," must be included in the hypothetical. *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014). "However, where a limitation is supported by medical evidence, but is

---

[3] At the request of the Social Security Administration, Dr. Nagraj evaluated Sammons for disability purposes. He did not treat Sammons. (D.I. 15 at 3; Tr. 326).

[4] Other evidence supports the ALJ's overall conclusion. For example, the record does not document any acute exacerbation of Plaintiff's condition that corresponds with his alleged onset date and the record contains substantial gaps in treatment, reflecting that Plaintiff did not pursue treatment or require emergency intervention for almost two years after his January 2010 alleged onset date, and again for nearly two-and-a-half years between 2012 and 2015 during the relevant period.

6

opposed by other evidence in the record, the ALJ has discretion to choose whether to include that limitation in the hypothetical." *Id.* at 615.

Here, the ALJ posed a hypothetical question about an individual similar in age, education, and work experience as Sammons who was limited to unskilled work with routine repetitive tasks performed in a low stress environment with no public interaction and occasional interaction with co-workers and supervisors. (Tr. 61-63). The ALJ defined a low stress work environment as "no frequent changes in the work setting." (Tr. 63). Plaintiff complains that the hypothetical question posed did not expressly reference Sammons' difficulties in concentration, persistence and pace, and cites *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) to argue that the ALJ's hypothetical question was inadequate. (D.I. 16 at 9-10). The Third Circuit, however, "has acknowledged that a limitation to 'simple, routine tasks' in a hypothetical is adequate to account for moderate limitations in concentration, persistence, or pace." *Pimentel v. Berryhill*, No. 1:15-CV-2061, 2017 WL 4284559, at *3 (M.D. Pa. Sept. 27, 2017) (citing, *e.g., McDonald v. Astrue*, 293 Fed. App' x 941, 946-47, 946 n.10 (3d Cir. 2008) (nonprecedential); *Menkes v. Astrue*, 262 Fed. App'x. 410, 412-13 (3d Cir. 2008) (nonprecedential)). "The court further noted that 'performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration.'" *Id.* (quoting *Menkes*, 262 Fed. App'x. at 412 ("The term "simple routine tasks," in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a "simple routine task" typically involves low stress level work that does not require maintaining sustained concentration.").

Moreover, here, the ALJ went further than asking about "routine repetitive tasks." She specified that the tasks were to be performed in a low stress environment with no public interaction and only occasional interaction with co-workers and supervisors. (Tr. 61-63). This adequately

accounts for the moderate limitations identified at step three, particularly where, as here, mental health treatment notes document that Plaintiff had intact memory and a capacity for sustained mental activity. (Tr. 362, 368, 371, 374, 377). Thus, the ALJ asked a hypothetical question that took into consideration all of Sammons' medically established impairments and limitations.

_____
The Honorable Maryellen Noreika
United States District Judge